**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI**

**UNITED STATES OF AMERICA**

**V.**                                                                                          **NO. 4:24-CR-10**

**JAMES MICHAEL FISHER**

**ORDER**

Following federal agents' investigation of the crash of a United States Marine Corps aircraft that killed all service members on board, James Michael Fisher was indicted in the Northern District of Mississippi on four counts charging obstruction of justice crimes.  Fisher moves to dismiss the Indictment, arguing venue is improper in the Northern District of Mississippi because the acts alleged in the Indictment took place in the Middle District of Georgia.  Because venue in the Northern District of Mississippi is proper for three of the four counts under either a specific venue provision or an effects-based venue analysis, Fisher's motion to dismiss will be granted in part and denied in part.

**I**
**Procedural History**

On January 25, 2024, a federal grand jury in the United States District Court for the Northern District of Mississippi returned a four-count Indictment against James Michael Fisher regarding the July 10, 2017, crash of a United States Marine Corps KC-130 transport aircraft in Leflore County, Mississippi, which killed all onboard Marines and a Navy Corpsman.  Doc. #3.  Count One charges Fisher with concealing a material fact by representing to federal agents that he was not aware of "Nonconforming Technical Assistance Request and Reply Forms" ("Form 202s") relevant to the federal criminal investigation of the crash, in violation of 18 U.S.C. § 1001(a)(1).  *Id.* at 25.  Count Two charges Fisher with making materially false and fraudulent

statements and representations to federal agents that on August 22, 2011, he never would have removed the penetrant inspections for detecting propeller blade defects, in violation of 18 U.S.C. § 1001(a)(2). *Id.* at 25–26. Count Three charges Fisher with attempting to conceal Form 202s with the intent to impair their availability for use in the grand jury investigation of the cause of the crash, in violation of 18 U.S.C. § 1512(c)(1). *Id.* at 26–27. And Count Four charges Fisher with concealing Form 202s with the intent to obstruct the federal criminal investigation of the cause of the crash, in violation of 18 U.S.C. § 1519.[1] *Id.* at 27.

On May 8, 2025, Fisher filed a motion requesting the Court dismiss the Indictment based on a "find[ing] that a trial of [him] in the Northern District of Mississippi on the criminal charges contained in the indictment would violate [his] rights under … the 'Venue Clause' of Article III … and the 'Vicinage Clause' of the Sixth Amendment."[2] Doc. #35 at 4–5. The government responded in opposition on June 5, 2025. Doc. #39. Fisher replied on June 20, 2025.[3] Doc. #42.

## II
## Venue Considerations

Article III of the Constitution states that "[t]he Trial of all Crimes … shall be held in the State where the said Crimes shall have been committed." U.S. CONST. art. III, § 2, cl. 3; *see* U.S. CONST. amend. VI ("In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed."); *see also* FED. R. CRIM. P. 18 ("Unless a statute or these rules permit otherwise, the government must prosecute an offense in a district where the offense was committed."). Under 18

---

[1] On July 3, 2024, Fisher was arrested on the Indictment and had his initial appearance in the Middle District of Florida. Doc. #11; Doc. #7 at PageID 37–38, 40–41. He was released from custody two days later under a $10,000 unsecured bond with conditions. Doc. #7 at PageID 38, 44–48.

[2] Inexplicably, the motion is titled, "Defendant's Motion *in Limine* to Dismiss Indictment for Improper Venue." Doc. #35 at 1 (emphasis added).

[3] Both parties requested and were granted extensions of time. Docs. #38, #41.

U.S.C. § 3237(a), "any offense against the United States begun in one district and completed in another, or committed in more than one district, may be inquired of and prosecuted in any district in which such offense was begun, continued, or completed." *See United States v. Fells*, 78 F.3d 168, 170 (5th Cir. 1996) ("When an offense is begun in one district and completed in another, venue is proper in any district in which the offense was 'begun, continued, or completed.'") (quoting 18 U.S.C. § 3237(a).

It is the government's burden to prove venue is proper. *United States v. Strain*, 396 F.3d 689, 692 n.3 (5th Cir. 2005). "When 'a defendant is charged with multiple crimes in a single indictment, the government must satisfy venue with respect to each charge.'" *Purcell v. United States*, 158 F.4th 441, 447 (2d Cir. 2025) (quoting *United States v. Davis*, 689 F.3d 179, 185 (2d Cir. 2012)); *see United States v. Pace*, 314 F.3d 344, 349 (9th Cir. 2002) ("When a defendant has been indicted on multiple counts, venue must be proper for each count."); *United States v. Root*, 585 F.3d 145, 155 (3d Cir. 2009) ("[V]enue must be proper for each count of the indictment."). "'Although … the burden of proving that the crime occurred in the district of trial is squarely on the prosecution, the prosecution is not required to meet the reasonable doubt standard applicable to all substantive elements of an offense.' Rather, 'if the Government shows by a preponderance of the evidence that the crime was committed in the trial district, … proper venue [is] established.'" *United States v. Romans*, 823 F.3d 299, 315–16 (5th Cir. 2016) (quoting *United States v. White*, 611 F.2d 531, 534–35 (5th Cir. 1980)). "When deciding a pretrial motion to dismiss an indictment for improper venue, the district court assesses only whether the allegations of the indictment, if true, would suffice to establish venue." *United States v. Powers*, 40 F.4th 129, 134 (4th Cir. 2022); *see United States v. Clark*, 728 F.3d 622, 623 (7th Cir. 2013) ("We accept these factual allegations as true in assessing a pre-trial motion to dismiss an indictment for improper venue.").

### III
### Factual Allegations of Indictment

On July 10, 2017, a United States Marine Corps KC-130 transport aircraft ("Yanky 72") crashed in Leflore County, Mississippi, killing all fifteen Marines and a Navy Corpsman onboard. Doc. #3 at 1. Immediately following the crash, the United States Marine Corps commissioned a team of Marine Corps investigators to determine the cause and responsibility of the crash. *Id.*

In 2018, the Marine Corps investigators concluded that the cause of the crash was a defective propeller blade that should have been repaired in the late summer of 2011 during routine maintenance at the Warner Robins Air Logistics Complex at Robins Air Force Base located in Warner Robins, Georgia. *Id.* The investigators also concluded that maintenance personnel at Robins were grossly negligent in following procedures that would have detected the blade's defects. *Id.* Based on these conclusions, a criminal investigation was opened by federal agents in the Northern District of Mississippi in 2020 to identify the individuals at Robins whose gross negligence was responsible for the crash. *Id.* at 2. During this investigation, federal agents learned the Marine Corps investigators were misled about what maintenance procedures were in place in 2011. *Id.* Federal agents became aware that at such time, engineers at Robins authorized the removal of a critical inspection procedure for detecting propeller blade defects, which caused the agents to scrutinize whether the decision was related to the cause of the crash. *Id.*

James Michael Fisher was a lead engineer responsible for propeller maintenance, and was one of the key decisionmakers in removing the critical inspection procedure in August 2011. *Id.* Because of his position, Fisher was the primary individual responsible for providing federal agents with information regarding which inspection procedures were in place in 2011 and which procedures had been removed. *Id.* Rather than cooperating with federal agents, Fisher intentionally withheld documents showing he played a crucial role in removing the critical

4

inspection procedure, and provided false statements to federal agents to cover up his role in removing the critical inspection procedure. *Id.* at 3.

**IV**

**<u>Analysis</u>**

Fisher argues the Indictment must be dismissed because (1) "any and all acts or actions [he] is alleged to have committed occurred … within the Macon Division of the United States District Court for the Middle District of Georgia,"[4] and (2) "[t]here is no allegation whatsoever in the entirety of the indictment that [he] committed any act within the jurisdiction of the Northern District of Mississippi, or that [he] has ever been within the jurisdiction of the Northern District of Mississippi." Doc. #36 at 15.

The government responds that venue is appropriate in the Northern District of Mississippi because (1) "contrary to Fisher's claim, one of the statutes under which he was indicted, 18 U.S.C. § 1512(c), *does have* a specific venue provision, 18 U.S.C. 1512(i)," which "alone is enough to confer venue" in the Northern District of Mississippi; and (2) "even without a specific venue provision, venue is still appropriate [in the Northern District of Mississippi] because Fisher's actions were intended to affect the criminal investigation arising out of the Northern District of Mississippi," and "the majority of courts have held that venue lies where the effects of the obstructed acts were felt, [particularly] when [an] element of [the] crime charged is defined in terms of its effect." Doc. #39 at 13–14 (emphasis in original).

Fisher replies that (1) "the Government's … response … demonstrates that … any and all alleged acts and/or alleged omissions that may have been a cause or contributing factor in the crash occurred at WR-ALC (i.e., Robins) located at Warner Robins, Georgia," and (2) "[n]one of the

---

[4] The Middle District of Georgia "is home to Robins Air Force Base in Warner Robins …." U.S. DEP'T OF JUST., *Middle District of Georgia*, https://www.justice.gov/usao-mdga (last visited Nov. 4, 2025).

5

statutes [he] is alleged to have violated contain a provision for a specific venue."[5] Doc. #42 at 2–3, 4.[6]

### A. Venue for Count Three: 18 U.S.C. § 1512

Count Three charges Fisher with violating 18 U.S.C. § 1512(c)(1) based on allegations that he "corruptly attempt[ed] to conceal documents … with the intent to impair their availability for use in an official proceeding." Doc. #3 at 26–27. Fisher generally argues that because "[n]one of the statutes invoked in the indictment contain an express venue provision, or provide for a particular or specific venue … to determine the proper venue for a prosecution under these statutes[,] the two-step inquiry of *Rodriguez-Moreno* must be conducted." Doc. #36 at 18. According to Fisher, after conducting such an analysis as to Count Three, Count Three must be dismissed for improper venue.[7] *Id.* at 20, 31.

Quoting 18 U.S.C. § 1512(i), the government counters that (1) "[s]tatutory authority establishes venue for [the Count Three] charge in the Northern District of Mississippi because the grand jury was convened here;" and (2) "the indictment clearly alleges that Fisher obstructed the grand jury proceeding in the Northern District of Mississippi by concealing the existence of Form 202s in order to impair their availability for that proceeding." Doc. #39 at 17.

Fisher replies that "[s]ection 1512 does not establish or 'provide for a particular or specific

---

[5] As to this point, Fisher concedes that "a subparagraph of Section 1512 … addresses venue," but argues that this subsection "indicates that the appropriate venue for Count Three actually lies in Georgia." Doc. #42 at 4.

[6] In his reply, Fisher also contends that "this Court should take judicial notice that it cannot be reasonably disputed that inspection of the work being conducted would have been part of the overhaul process for propeller blades at [Robins], and that there would have been a final inspection at the end of the overhaul process for each propeller blade (specifically including P2B4), at which point some specific individual maintenance worker allowed P2B4 to pass the final inspection and be placed into the inventory of propeller blades ready for installation upon a C-130 aircraft such as Yanky 72." *Id.* at 9–10. Since this contention is not related to the venue issue, it will not be considered by the Court at this time.

[7] Applying step one of the *Rodriguez-Moreno* analysis, Fisher contends that "[f]or Count Three the four (4) 'essential conduct elements' the Government must prove are: (1) Act of Concealment …; (2) Corrupt Intent …; (3) Intent to Obstruct an Official Proceeding …; (4) Nexus to an Official Proceeding." Doc. #36 at 20. Applying step two, Fisher concludes that "every act or action [he] is alleged to have done occurred in Georgia." *Id.* at 31.

venue' but the statute recognizes that, as with essentially all criminal actions, venue would be appropriate 'in the district in which the conduct constituting the alleged offense occurred.'"  Doc. #42 at 4 (citing 18 U.S.C. § 1512(i)).

"Occasionally, Congress has enacted special venue provisions for particular crimes. These provisions dictate venue decisions unless they contravene constitutional requirements."[8]  Congress enacted such a provision for charges brought under 18 U.S.C. § 1512.  Subsection (i) of that statute instructs, "A prosecution under this section … may be brought in the district in which the official proceeding (whether or not pending or about to be instituted) was intended to be affected *or* in the district in which the conduct constituting the alleged offense occurred."  18 U.S.C. § 1512(i) (emphasis added).  While both parties cite the portion of the statute favoring their respective positions, a full reading of subsection (i) makes clear that venue for Count Three is proper in either the Northern District of Mississippi—where the official proceeding (grand jury) was intended to be affected—or in the Middle District of Georgia—where the conduct alleged to constitute the charged offense occurred.  As such, Count Three will not be dismissed for improper venue.

### B.  Venue for Counts One, Two, and Four

Where no specific venue provision applies to a charged criminal offense, the "locus delicti must be determined from the nature of the crime alleged and the location of the act or acts constituting it."  *United States v. Cabrales*, 524 U.S. 1, 6–7 (1998) (quoting *United States v. Anderson*, 328 U.S. 699, 703 (1946)) (parallel citation omitted).  "In performing this inquiry, a court must initially identify the conduct constituting the offense (the nature of the crime) and then discern the location of the commission of the criminal acts."  *United States v. Rodriguez-Moreno*, 526 U.S. 275, 279 (1999).

---

[8] CHARLES DOYLE, CONG. RSCH. SERV., RL33223, VENUE: A LEGAL ANALYSIS OF WHERE A FEDERAL CRIME MAY BE TRIED 12 (2018), https://www.congress.gov/crs_external_products/RL/PDF/RL33223/RL33223.8.pdf.

**1. Counts One and Two: 18 U.S.C. § 1001**

Counts One and Two charge Fisher, respectively, with "willfully and knowingly conceal[ing] and cover[ing] up by scheme a material fact in a matter within the jurisdiction of the executive branch of the Government of the United States," in violation of 18 U.S.C. § 1001(a)(1); and "willfully and knowingly mak[ing] materially false, fictitious, and fraudulent statements and representations in a matter within the jurisdiction of the executive branch of the Government of the United States," in violation of 18 U.S.C. § 1001(a)(2). Doc. #3 at 25–26. Neither § 1001(a)(1) nor § 1001(a)(2) have a specific venue provision.

Applying the first step in the *Rodriguez-Moreno* analysis, Fisher contends that "for Count One the five (5) 'essential conduct elements' the Government must prove are: (1) Concealment or Falsification …; (2) Materiality …; (3) Jurisdiction …; (4) Intent …; and, (5) Scheme or Artifice." Doc. #36 at 18–19. As to the second step, Fisher maintains that, while Count One "contain[s] … language regarding 'the location of the commission of the criminal acts' (which is the second step under *Rodriguez-Moreno*)," the Indictment's use of "the phrase '… arising out of the Northern District of Mississippi,'" does not "confer[] jurisdiction in Mississippi over acts or actions that allegedly occurred in Georgia." Doc. #36 at 25.

Using the same analysis, Fisher states that "[f]or Count Two the four (4) 'essential conduct elements' the Government must prove are: (1) False Statement or Representation …; (2) Materiality …; (3) Jurisdiction …; and, (4) Knowledge and Willfulness." Doc. #36 at 19–20. According to Fisher, there is not "any language regarding 'the location of the commission of the criminal acts'" included in Count Two of the Indictment; and since "an act constituting the alleged offense *must* have occurred in the district of indictment," "the indictment here must be dismissed, because, taking all allegations in the indictment as true, every act or action [he] is alleged to have

8

done occurred in Georgia." *Id.* at 25, 30, 31 (emphasis in original).

The government responds that (1) "[i]n the Fifth Circuit, materiality is the third element of a false statement claim that must be proven beyond a reasonable doubt in order to sustain a conviction;" (2) "the majority of courts have held that materiality is an essential element to a false statement crime and confers venue where the effects of the material statement are felt;"[9] and (3) "[b]inding precedent, albeit in different contexts, supports [the] rationale that … materiality is an essential element of a false statement claim, and … materiality must be determined based on the effects of its intended conduct." Doc. #39 at 20, 22, 24 (citing *United States v. Baker*, No. A-13-CR-346-SS, 2014 WL 722097, at *4 (W.D. Tex. Feb. 21, 2014)). For these reasons, the government posits:

> [V]enue is appropriate in the Northern District of Mississippi because the materiality of Fisher's false statement is inextricably linked with the attempted effect it had on the federal investigation. Fisher was charged [with] falsely stating to federal agents that "he would never have removed the penetrant inspections on August 22, 2011." This statement is a quintessential *material* false statement; its intent was to avoid criminal responsibility for the Yanky 72 crash, which was initiated in the Northern District of Mississippi.

*Id.* at 24 (emphasis in original).

In reply, Fisher argues that (1) "[t]he Government's Response recognizes that the Tenth Circuit and the Ninth Circuit have rejected the 'effects based' venue jurisdiction the Government advocates;" and (2) because "[t]he Ninth Circuit's position [in *Fortenberry*] that 'the location of

---

[9] For this assertion, the government cites *United States v. Aprahamian*. No. 20-64, 2022 WL 221614 (E.D. Pa. Jan. 25, 2022). The government reasons, "In *Aprahamian*, a district court in the Third Circuit explained that the First, Second, Fourth, and Seventh Circuits 'have determined materially false means that the effect of such a statement expands the number of appropriate venues to include those in which the effect of the statement was felt;'" and "[t]he Tenth and Eleventh Circuits, however, have determined that 'venue is only proper in the place where the statement was made, regardless of its effects." Doc. #39 at 21 (citing *Aprahamian*, 2022 WL 221614, at *6). The government notes that "this precise issue has not been decided in the Fifth Circuit, but at least one district court in the Fifth Circuit, recognizing the split, has held that venue is proper in a jurisdiction where the effects of the false statement would be material to the investigation." *Id.* at 22 (citing *United States v. Baker*, No. A-13-CR-346-SS, 2014 WL 722097, at *4 (W.D. Tex. Feb. 21, 2014)).

the crime must be understood to be the place where the defendant makes the statement' dovetails almost perfectly with the Fifth Circuit's ruling [in *Clenney*] that 'the intent element is a mental state that cannot have been "committed" anywhere but where defendant was physically present,'" "this Court should reject the Government's argument for application of 'effects based' venue jurisdiction." Doc. #42 at 19–20 (emphasis omitted) (citing *United States v. Fortenberry*, 89 F.4th 702, 712 (9th Cir. 2023), and *United States v. Clenney*, 434 F.3d 780, 782 (5th Cir. 2005)).

### a. *Circuit Split Regarding Effects-Based Venue*

In *Rodriguez-Moreno*, the United States Supreme Court expressly declined to address whether venue is proper in any district in which the crime's effects are felt.[10]  *See* 526 U.S. at 279 n.2 ("The Government argues that venue also may permissibly be based upon the effects of a defendant's conduct in a district other than the one in which the defendant performs the acts constituting the offense. Because this case only concerns the *locus delicti*, we express no opinion as to whether the Government's assertion is correct.") (emphasis in original) (internal citation omitted).  And because "[i]n an obstruction of justice case, both the district where the defendant acts and the district of the target proceeding meet the minimal contacts test,"[11] "[t]he circuits have divided over where to lay venue in prosecutions for obstruction of justice when the defendant allegedly acted in one judicial district to obstruct a proceeding that was pending in another."[12] Five circuits—the First, Second, Fourth, Sixth, and Seventh—have ruled that effects-based venue is proper for a § 1001 charge.  Three others—the Ninth,[13] Tenth, and Eleventh—have held effects-based venue is not proper for a § 1001 charge.  It does not appear that the Fifth Circuit has

---

[10] Charles Doyle, Cong. Rsch. Serv., RL33223, Venue: A Legal Analysis of Where a Federal Crime May be Tried 12 (2018), https://www.congress.gov/crs_external_products/RL/PDF/RL33223/RL33223.8.pdf.

[11] Note, *Criminal Venue in the Federal Courts: The Obstruction of Justice Puzzle*, 82 Mich. L. Rev. 90, 96 (1983).

[12] *Id.* at 93–94.

[13] As discussed below, the Ninth Circuit has ruled that effects-based venue is proper for charges under other statutes.

addressed this issue as it pertains to a § 1001 charge (nor have the Third, Eighth, D.C., and Federal Circuits).  A review of the cases holding effects-based venue is proper and those cases holding it is not, along with the rationale underlying those decisions, is instructive.[14]

### i. Effects-based venue proper

In 2002, the Seventh Circuit in *United States v. Ringer* concluded that effects-based venue is appropriate for a charge under 18 U.S.C. § 1001.  In that case, Robert J. Ringer was indicted in the Southern District of Indiana with making a false statement to federal officers in Kentucky in violation of 18 U.S.C. § 1001.[15]  300 F.3d 788, 789–90 (7th Cir. 2002).  After the district court denied his "motion for acquittal due to improper venue at the close of the government's case," "he was found guilty by a jury."  *Id.* at 790.  Ringer appealed "the district court's denial of his motion for judgment of acquittal due to improper venue."[16]  *Id.*  But the Seventh Circuit concluded that "venue was proper in the Southern District of Indiana," agreeing that "when Ringer made false statements, he never left Kentucky" but disagreeing that "what transpired in Indiana" because of Ringer's false statements "is irrelevant for venue purposes."  *Id.* at 791.  Referencing its 1987 opinion in *United States v. Frederick*,[17] the court noted the importance of the materiality

---

[14] This Court is not bound by any decisions of federal circuit courts except the Fifth Circuit.  *Avelar-Oliva v. Barr*, 954 F.3d 757, 765 (5th Cir. 2020).

[15] After Ringer was indicted for conspiracy to possess with intent to distribute marijuana, "[h]e agreed to plead guilty and provide drug trafficking information about other individuals in exchange for a government motion requesting a lesser sentence."  *Ringer*, 300 F.3d at 789.  However, when "federal agents traveled to the federal prison in Manchester, Kentucky, where Ringer was serving his sentence," "Ringer recanted his previous statements" regarding the drug trafficking activity of three friends in Indiana "and disavowed any knowledge of his friends' drug trafficking activities."  *Id.* at 790.

[16] Specifically, Ringer argued that (1) "according to the general venue rule, venue is only proper in the Eastern District of Kentucky because that is where the false statements were uttered, and therefore, where they were 'begun, continued, or completed,' in the words of 18 U.S.C. § 3237(a);" (2) "the continuing offense theory, the exception to the general venue rule, does not apply because the statements were completed in Kentucky;" and (3) "when determining venue [the Seventh Circuit] should not look to where the offense's effects were felt."  *Id.* at 790–91.

[17] In *Frederick*, it held that "[p]roper venue is not limited to districts where the defendants were physically present when they committed unlawful acts. So long as an overt act … is intended to have an effect in the district where the

requirement imposed by § 1001: "The Southern District of Indiana's strong link to Ringer's conduct makes it relevant to determining venue, not as an explicit geographic element … but as a place where events took place that were necessary to establish materiality. Venue is only improper 'if the only acts that occurred in that district do not provide evidence of the elements of the charged crime.'"[18]  *Id.* at 792 (quoting *United States v. Ochoa*, 229 F.3d 631, 636 (7th Cir. 2000)).  Given that evidence of the materiality of Ringer's statements was present in the Southern District of Indiana,[19] the Seventh Circuit rejected Ringer's improper venue arguments and affirmed the district court's denial of his motion for judgment of acquittal.  *Id.*

Two years later in *United States v. Salinas*, the First Circuit, "[s]tepping onto virgin soil," addressed whether venue in the context of prosecution for passport fraud "can be laid in the district in which the State Department chooses to process a passport application even though that district has no other link to the offender or the offense."  373 F.3d. 161, 162 (1st Cir. 2004).  There, Angel Edmundo Salinas was indicted in the District of New Hampshire for, among other things, "making false statements in violation of 18 U.S.C. § 1001" after he submitted a fraudulent New Jersey birth certificate to a passport application intake station in Brooklyn, New York.[20]  *Id.* at 163.  "Salinas moved to dismiss the indictment for lack of venue" but the district court denied his motion.  *Id.*

---

case is finally brought, venue is proper."  835 F.2d 1211, 1215 (7th Cir. 1987) (quoting *United States v. Brown*, 739 F.2d 1136, 1148 (7th Cir. 1984)).

[18] According to the Seventh Circuit, the elements of 18 U.S.C. § 1001 are (1) a statement was made; (2) the statement was false; (3) the statement was material; (4) the statement was made knowingly and willingly; and (5) the statement concerned a matter within the jurisdiction of a federal department or agency.  *Ringer*, 300 F.3d at 791.

[19] "[T]he halting of the investigation against Ringer's friends in the Southern District of Indiana was evidence of the materiality of Ringer's statements."  *Id.*

[20] Salinas, a native of Ecuador, appeared at a passport application intake station in Brooklyn, New York, where he "completed the usual paperwork, produced a bogus New Jersey birth certificate as 'proof' of United States citizenship, and paid the stipulated fee."  *Salinas*, 373 F.3d at 163.  The post office in New York sent Salinas's application to a bank in Pittsburgh, Pennsylvania, which, after "enter[ing] basic biographical data derived from the application into the State Department's computer system and deposit[ing] Salinas's check into a State Department account," forwarded the application to a national passport center in Portsmouth, New Hampshire, where the fraud was discovered.  *Id.*

On appeal by Salinas,[21] the First Circuit recognized that "courts consistently treat section 1001 crimes as continuing offenses [because s]ection 1001 explicitly criminalizes only those false statements that are material." *Id.* at 166–67. The First Circuit held that "[w]hen materiality is a critical component of the statutory definition, it makes perfect sense to consider the crime as continuing into the district in which the effects of the false statement are felt. After all, since materiality is an element of the offense, a defendant cannot be convicted under section 1001 unless and until such a connection can be shown."[22] *Id.* at 167 (internal citations omitted).

In 2012, the Fourth Circuit addressed the same issue in *United States v. Oceanpro Industries, Limited*. Oceanpro and one of its employees were indicted in Maryland for giving a false statement to law enforcement officers and challenged venue in the District of Maryland because the false statement was made in the District of Columbia. 674 F.3d 323, 327 (4th Cir. 2012). After the district court denied their motion to dismiss the indictment, they were found guilty at trial and appealed their convictions. *Id.* The Fourth Circuit, adhering to its opinion in *United States v. Bowens*,[23] determined the essential conduct of Section 1001 to be "making any materially false statement." *Id.* at 329 (internal quotation marks omitted). It noted that "when statutory language merely 'defines the requisite intent for an offense,' or makes an offense dependent on proof of an antecedent crime, that language will not support venue;" however, "where … the essential conduct constituting the offense inherently references the effects of that conduct, 'venue is proper in the district where those prescribed effects would be felt.'" *Id.* (quoting

---

[21] While the government ultimately dropped the § 1001 charge, the First Circuit still discussed effects-based venue for charges under that statute. *Id.* at 163, 166–67.

[22] Ultimately, the First Circuit found that New Hampshire was not a legally permissible venue because the passport fraud statute, 18 U.S.C. § 1542, "does not contain any materiality requirement." *Id.* at 167.

[23] In *Bowens*, the Fourth Circuit held that "only the essential conduct elements of an offense, not the circumstance elements, provide a basis for venue." 224 F.3d 302, 310 (4th Cir. 2000).

*Bowens*, 224 F.3d at 313). Ultimately finding that Congress, by including the materiality element,[24] inherently referenced the effect of making a false statement, the Fourth Circuit held venue was proper in Maryland, the district where the statement's effect was felt. *Id.* at 329–30.

Also in 2012, the Second Circuit's decision in *United States v. Coplan* endorsed effects-based venue for charges under 18 U.S.C. § 1001.[25] In *Coplan*, Brian Vaughn appealed his conviction in the United States District Court for the Southern District of New York for, among other things, making false statements to the IRS. 703 F.3d 46, 54 (2d Cir. 2012). Vaughn undisputably made the false statements in Tennessee but those statements influenced an IRS investigation in the Southern District of New York. *Id.* at 79–80. Though Vaughn made the false statements in Tennessee, the Second Circuit found such fact did not make "what transpired in [New York] irrelevant for venue purposes." *Id.* at 79 (quoting *United States v. Candella*, 487 F.2d 1223, 1228 (2d Cir. 1973)). The Second Circuit reasoned that "the essential conduct prohibited by § 1001(a)(2) is the making of a materially false, fictitious, or fraudulent statement;" and "the materiality requirement proves dispositive with respect to venue" because "[p]roving the materiality of Vaughn's false statements in Tennessee necessarily requires evidence that those statements were conveyed to or had an effect on the IRS investigators working in the Southern District of New York." *Id.* The court noted that "the instant offense case began in Tennessee, where Vaughn made the false statements to IRS officials, but continued into the Southern District

---

[24] The Fourth Circuit agreed with its 2010 holding that "[t]he test of materiality is whether the false statement has a natural tendency to *influence* agency action or is capable of *influencing* agency action." *Oceanpro*, 674 F.3d at 329 (quoting *United States v. Garcia-Ochoa*, 607 F.3d 371, 375 (4th Cir. 2010)) (emphases in original) (internal quotation marks omitted).

[25] The Second Circuit had previously addressed effects-based venue for a charge under 18 U.S.C. § 1503. In *United States v. Reed*, the Second Circuit noted generally that "places that suffer the effects of a crime are entitled to consideration for venue purposes. Such districts have an obvious contact with the litigation in their interest in preventing such effects from occurring. To some extent this factor overlaps with the definition and nature of the crime." 773 F.2d 477, 482 (2d Cir. 1985).

of New York, where his deposition transcript was reviewed and discussed by IRS officials." *Id.* at 80. Because the materiality element of § 1001(a)(2) required evidence of an effect on the investigation in New York and because the Second Circuit viewed the false statement as a continuing offense, venue was proper in the Southern District of New York. *Id.*

In 2017, the Sixth Circuit in *United States v. Elliot* noted that it "and a number of other circuits have long recognized, 'so long as an overt act … is intended to have an effect in the district where the case is finally brought, venue is proper there.'" 876 F.3d 855, 861 (6th Cir. 2017)[26] (quoting *Frederick*, 835 F.2d at 1215). Commenting that "the Second Circuit has affirmed [that] 'places that suffer the effects of a crime are entitled to consideration for venue purposes [and s]uch districts have an obvious contact with the litigation in their interest in preventing such effects from occurring,'" *id.* at 862 (quoting *United States v. Reed*, 773 F.2d 477, 482 (2d Cir. 1985)), the Sixth Circuit recognized that "multiple circuits, including this one, hold that venue for obstruction of justice 'is proper in the district in which the proceeding is sought to be obstructed is pending even though the would-be obstructive acts took place elsewhere,'" *id.* (quoting *Reed*, 773 F.2d at 486).

*ii. Effects-based venue improper*

In 2011, the Tenth Circuit held in *United States v. Smith* that proper venue for a charge under 18 U.S.C. § 1001(a)(2) is "where the defendant makes a false statement." 641 F.3d 1200, 1207 (10th Cir. 2011). After Paul Smith was indicted in the Western District of Oklahoma for, among other things, making false statements to a federal agent while in Minnesota,[27] Smith moved

---

[26] In *Elliot*, Lucille Frial-Carrasco and others were convicted in the United States District Court for the Eastern District of Kentucky for conspiracy to distribute oxycodone in violation of 21 U.S.C. § 846. 876 F.3d at 860. "Frial-Carrasco object[ed] that the Eastern District of Kentucky was not a proper place to try her" because she prescribed the oxycodone in Florida, "but this argument fail[ed] because her participation in a conspiracy distributing oxycodone into Kentucky made the Eastern District of Kentucky a permissible venue for her trial." *Id.* at 861.

[27] Smith convinced the board of directors of Marie Detty—"a private non-profit youth and family service center in Lawton, Oklahoma," of which Smith was the executive director—to enter into a contract with Paradigm Associates, "a shell company that had no employees and performed no services." *Smith*, 641 F.3d at 1202–03. Though "Mr.

15

to dismiss that part of the Indictment, arguing Oklahoma was an improper venue. *Id.* at 1203–04. The district court denied the motion, and Smith was found guilty at trial. *Id.* at 1204. On appeal by Smith, the Tenth Circuit reversed, concluding venue was proper in Minnesota, not Oklahoma, because 18 U.S.C. § 1001(a)(2) "does not contain a venue clause, nor is there any language suggesting any 'essential conduct element' other than making a false statement," and "the *locus delicti* is where the defendant makes the false statement." *Id.* at 1207 (emphasis in original). The Tenth Circuit rejected the government's argument that venue was proper in Oklahoma because "the crime had substantial contacts with Oklahoma," reasoning that "[t]he Constitution and Rule 18 are clear: a crime must be prosecuted in the district *where it was committed*;" and "that a crime may be committed in multiple districts means only that venue may be proper in any district where the crime was committed—not that venue is proper in every district which has 'substantial contacts' with the crime." *Id.* at 1208 (emphasis in original). Also rejecting the government's argument that a "violation of § 1001(a)(2) is a 'continuing offense' and venue is therefore governed by § 3237(a)," the Tenth Circuit clarified that while it "ha[s] held that giving a false statement may be a continuing offense, where the statement is 'made' in more than one district," "that does not mean that all violations of § 1001(a)(2) are continuing violations." *Id.*

One year later in *United States v. John*, the Eleventh Circuit agreed with the Tenth Circuit's *Smith* decision. There, Jocelyn Tannazy John was indicted, tried, and convicted under 18 U.S.C. § 1001 in the Northern District of Florida for making a false statement to an FBI agent while in Miami.[28] 477 F. App'x 570, 571 (11th Cir. 2012). On appeal, John argued "venue was improper

---

Smith assured the Board that he would not receive direct financial benefit from the contract," a financial director at Marie Detty discovered that "the checks issued to Paradigm were deposited in the same account as Mr. Smith's paychecks." *Id.* at 1203. "An investigation ensued, and Mr. Smith resigned and moved to Minnesota." *Id.* During the course of the investigation, an FBI agent interviewed Smith in Minnesota. *Id.*

[28] John was working as a bank employee when she accepted $1,000 from Ali Hassan Hammoud, a bank customer who was involved in fraudulently transferring $5.7 million from the Florida state treasury into his own bank account. *John,*

in the Northern District of Florida because she made her false statement to the FBI agent … while she was in the Southern District of Florida." *Id.* The Eleventh Circuit concurred with the Tenth Circuit's conclusion that "for purposes of venue under section 1001(a), 'the *locus delicti* is where the defendant makes the false statement.'" *Id.* at 572 (quoting *Smith*, 641 F.3d at 1207) (emphasis in original). Applying this conclusion to John, the Eleventh Circuit held venue was not proper in the Northern District of Florida, explaining that "John's false statement was made and received by an FBI agent entirely inside the Southern District of Florida [and] John's own offense conduct began, continued, and was completed in the Southern District of Florida." *Id.*

The Ninth Circuit addressed the venue issue in 2023 in *Fortenberry*. In that case, Jeffrey Fortenberry was "indicted in the Central District of California on one count of scheming to falsify and conceal material facts in violation of 18 U.S.C. § 1001(a)(1), and two counts of making false statements in violation of 18 U.S.C. § 1001(a)(2)" for statements made while he was in Nebraska and Washington, D.C. [29] 89 F.4th at 704–05. "Fortenberry moved to dismiss the case for improper venue[ but] the district court denied his motion," and at trial he was found guilty on all counts. *Id.* In considering Fortenberry's appeal, the Ninth Circuit stated, "The question of venue in this case is answered by determining which of the[] statutory elements is the essential conduct of a Section 1001 offense, and which is a 'circumstantial element' that is necessary for a conviction but not a

---

477 F. App'x at 571. The FBI began investigating Hammoud's wire fraud scheme in the Northern District of Florida. *Id.* The FBI interviewed John at her home in Miami to determine the nature of her involvement with the fraud, and John denied receiving money from Hammoud. *Id.* "But John later admitted in Miami that she had received money from Hammoud and signed in Miami a written statement describing her acceptance of the money." *Id.*

[29] Fortenberry was a resident of Lincoln, Nebraska, who, beginning in 2004 was elected to represent his home state during several terms in Congress. *Fortenberry*, 89 F.4th at 704. In 2019, two FBI agents traveled to Lincoln to interview Fortenberry in conjunction with an investigation regarding "a foreign national suspected of improperly financing several U.S. political campaigns." *Id.* This investigation was run out of "the FBI's Los Angeles field office, located in the Central District of California." *Id.* During the Nebraska interview, Fortenberry "denied awareness of any foreign or conduit contributions to his campaign." *Id.* Fortenberry spoke to investigators again in Washington, D.C., where he "said again that he was not aware of any illegal contributions to his campaign." *Id.*

17

factor in deciding the location of the offense for venue purposes." *Id.* at 705. Using the verb test—
"the principle that the verb or verbs used in a criminal statute have 'value as an interpretive tool'
to 'determine the nature of the substantive offense'"—to help guide its reading of § 1001, the Ninth
Circuit held that "[t]he text of the statute plainly identifies the essential conduct of a Section 1001
offense to be the making of a false statement." *Id.* at 706 (quoting *Rodriguez-Moreno*, 526 U.S.
at 280). The court disagreed with the district court's determination that materiality was also an
essential conduct element, meaning venue could be proper in any district in which the effect of the
false statement was felt,[30] because the venue inquiry "turns on the action by the defendant that is
essential to the offense, and where that specific action took place" and "[m]ateriality is not conduct
because it does not require anything to actually happen." *Id.* at 707. Instead, the Ninth Circuit
explained that "[t]he materiality requirement of a § 1001 violation is satisfied if the statement is
*capable* of influencing or affecting a federal agency," meaning that "[t]he false statement need not
have actually influenced the agency." *Id.* (quoting *United States v. Serv. Deli Inc.*, 151 F.3d 938,
941 (9th Cir. 1998)) (emphasis in original). The Ninth Circuit did not deem materiality to be "an
essential conduct element of a Section 1001 violation," meaning that materiality "cannot play a
role in determining the *locus delicti* for purposes of venue." *Id.* (emphasis in original). The Ninth
Circuit reversed Fortenberry's convictions in California so that he may be retried in a proper venue.
*Id.* at 713.

 *Fortenberry* also addressed the circuit split on the issue. *Id.* at 707–710. The Ninth Circuit
declined to follow the Second Circuit's *Coplan* holding that "proving the materiality of the
defendant's false statements in Tennessee necessarily requires evidence that those statements were

---

[30] The district court relied on holdings from the First Circuit and the Second Circuit in reaching this conclusion. *Id.*
at 706 (citing *Salinas*, 373 F.3d at 166–67 and *Coplan*, 703 F.3d at 79).

conveyed to or had an effect on the IRS investigators working in the Southern District of New York," stating that such a holding is "in tension with *United States v. Rogers*, 466 U.S. 475 (1984), which held that a false statement to the FBI need not affect an existing investigation to run afoul of Section 1001."[31] *Id.* at 708 (internal parallel citation omitted) (quoting *Coplan*, 703 F.3d at 79). And the Ninth Circuit found the Fourth Circuit's *Oceanpro* opinion unpersuasive.[32] *Id.* at 708–09. Further, it remarked that "the likelihood of highly problematic venue outcomes is another reason to decline the … effects test." *Id.* at 709. The Ninth Circuit elaborated:

> The only connection between Fortenberry and the Central District of California, where he was tried and convicted, was that the agents worked in a Los Angeles office. What if the investigation had been conducted by federal agents in Los Angeles and Oklahoma? What if the government had transferred the investigation to agents in Massachusetts? What if an investigating agent simply moved from Los Angeles to Hawaii for personal reasons but maintained a lead role in prosecuting the case? What if the government chose to base every single Section 1001 investigation in Washington, D.C., where federal agencies are headquartered? The government's effect test would say that venue is proper in any one of those locations, irrespective of where the false statement was actually made. This would be an odd and troubling result for an offense that does not require an actual effect on the investigators.

*Id.* at 709.[33] According to the Ninth Circuit, "[t]his outlandish outcome cannot be squared with

---

[31] In *Rogers*, the Supreme Court did not explicitly state a false statement that does not affect an existing investigation may be criminally prosecuted under § 1001. 446 U.S. 475 (1984). In this case, Rodgers told the FBI that his wife had been kidnapped and that she was involved in a plot to kill the president, despite knowing that these statements were false, which caused the FBI and Secret Service to spend over 250 hours investigating these claims. *Id.* at 476–77. While the Supreme Court's main focus was the scope of "any matter within the jurisdiction of the executive, legislative, or judicial branch of the Government of the United States," the Supreme Court did remand the case for further proceedings despite the fact that that the FBI did not commence an investigation until after the false statements were made. *Id.* at 479–484.

[32] Specifically, the Ninth Circuit was unpersuaded by the Fourth Circuit's analogy of § 1001(a)(2) to the Hobbs Act or to obstruction of justice. *Fortenberry*, 89 F.4th at 708–09. The Fourth Circuit stated that, "just as Congress defined the effects of conduct in the Hobbs Act and 18 U.S.C. § 1503, it defined the effects in § 1001 through the element of materiality," and that "proving materiality necessarily requires evidence of the existence of the federal investigation in Maryland," where it held effects-based venue was proper. *Oceanpro*, 674 F.3d at 329. The Ninth Circuit did not find Section 1001 to be similar to the Hobbs Act or obstruction of justice because "[t]he Hobbs Act expressly forbids conduct affecting commerce in particular ways, and the obstruction statute conduct affecting court cases. Section 1001, by contrast, proscribes making materially false statements—not actually affecting or interfering with a federal agency's investigation through the making of statements." *Fortenberry*, 89 F.4th at 709.

[33] Despite making such an argument, the Ninth Circuit previously addressed that as "a result of [an effects-based venue] analysis … venue will often be possible in districts with which the defendant has no personal connection, and

the Constitution." *Id.*

More, the Ninth Circuit rejected the government's argument that Fortenberry's statements could be considered continuing offenses. *Id.* at 710. It held that § 3237—which "permits the prosecution of 'any offense against the United States begun in one district and completed in another, or committed in more than one district … in any district in which such offense was begun, continued, or completed'"—"says nothing about where a Section 1001 defendant like Fortenberry began or completed the offense." *Id.* (quoting 18 U.S.C. § 3237(a)). To the Ninth Circuit, § 3237 "merely invites the next step of determining the essential conduct of a Section 1001 crime," which, "[a]s discussed," is an analysis that "does not come out in favor of the effects test." *Id.*

While the Ninth Circuit agreed that "there certainly are crimes that may be prosecuted where their effects are felt," it opined that "those situations are markedly different from a Section 1001 offense, for which no statute nor universal recognition permits a prosecution where the effects of a statement are felt, and serve only to illustrate that Congress is well equipped to identify the circumstances in which an effects-based venue rule is appropriate," which it chose not to do with § 1001. *Id.* at 711. Finally, the court determined its holding "is in line with our national historical practices and traditions with respect to venue" because "[t]he founding generation had a deep and abiding antipathy to letting the government arbitrarily choose a venue in criminal prosecutions [and i]mplying an effects-based test for venue in Section 1001 cases, when Congress has not so specified, would allow just that, in derogation of our historical principles." *Id.* at 711, 712.

---

which may occasionally be distant from where the defendant originated the actions constituting the offense," and held "in such cases 'the remedy is not to narrow criminal venue, but to permit easy transfer.'" *United States v. Angotti*, 105 F.3d 539, 544 (9th Cir. 1997), *abrogated on other grounds by Cabrales*, 524 U.S. at 5–6 (quoting CHARLES ALAN WRIGHT, LAW OF FEDERAL COURTS § 43 at 275) (5th ed. 1994)).

*b. Fifth Circuit*

As mentioned above, the Fifth Circuit does not appear to have addressed the issue of whether effects-based venue is appropriate for a § 1001 charge. In *Clenney*, the Fifth Circuit, using the *Rodriguez-Moreno* analysis, determined that effects-based venue was not appropriate for charges under 18 U.S.C. § 1204. 434 F.3d at 781–82. However, because *Rodriguez-Moreno* requires an analysis of the statute at issue, s*ee id.* at 781 ("To identify the conduct constituting the offense, we scrutinize the statute of conviction."), the Fifth Circuit's *Clenney* decision cannot be construed to mean that effects-based venue for *other* statutes is prohibited. And while Fisher is correct that the Fifth Circuit held in *Clenney* that "the intent element is a mental state that cannot have been 'committed' anywhere but where [the defendant] was physically present,"[34] intent should not be equated to materiality.

As the government correctly notes, the only court in the Fifth Circuit to have addressed whether effects-based venue is appropriate in a § 1001 case is the Western District of Texas in *Baker*. There, Michael Baker, the former CEO of AnthroCare, a medical device company, was indicted for making false statements to the Securities and Exchange Commission, among other things. 2014 WL 722097, at *1. Baker moved to dismiss the counts of the Indictment that charged him with "making three specific false statements during a civil deposition before the SEC in the SEC's field office in Fort Worth, Texas," contending "those three counts must be brought in the Northern District of Texas, which encompasses Fort Worth, not the Western District of Texas." *Id.* at *3. Acknowledging that "[t]he Fifth Circuit has not yet addressed this issue," the district court stated that "[i]n the absence of a specific rule from the Fifth Circuit, the Court concludes venue in this case is proper in the Western District of Texas," explaining:

---

[34] Doc. #36 at 3 (citing *Clenney*, 434 F.3d at 782).

The materiality of Baker's allegedly false statements can only be determined by reference to his extensive conduct in the Western District, where AnthroCare is headquartered, where Baker was employed, and where Baker stood to benefit from any false statements. In short, everything and everyone involved in this case is tied directly to the Western District. The fact Baker made these particular statements in the Northern District is entirely fortuitous. It makes no sense for the Government, for Baker, or for the courts to try Baker in two separate districts for conduct related to the same allegedly fraudulent activity. Convicting Baker on the false statement charges in the Northern District would require essentially the same proof as will be offered at his trial in this district, because the impact of those allegedly false statements was felt in this district and intimately connected to Baker's and AnthroCare's dealings in this district.

*Id.* at *4. So, the district court denied Baker's motion to dismiss for improper venue. *Id.*

### c. Northern District of Mississippi as Proper Venue for Counts One and Two

The United States Supreme Court has held that the "locus delicti of the charged offense must be determined from the nature of the crime alleged and the location of the act or acts constituting it." *Rodriguez-Moreno*, 526 U.S. at 279 (quoting *Cabrales*, 524 U.S. at 6–7) (emphasis omitted) (internal citation marks omitted). The first step in this analysis is to "identify the conduct constituting the offense (the nature of the crime)." *Id.* This Court identifies the conduct elements of Count One's § 1001(a)(1) offense to be falsifying, concealing, or covering up by any trick, scheme, or device a material fact; and the conduct element of Count Two's charged § 1001(a)(2) offense to be making a materially false, fictitious, or fraudulent statement or representation.[35] While the First, Third, Fourth, Sixth, Tenth, and Eleventh Circuits have determined that "'[a] false statement can be material even if the decision maker actually knew or should have known that the statement was false' or 'even if the decision maker did not actually rely on the statement,'" *United States v. Clay*, 832 F.3d 1259, 1309 (11th Cir. 2016) (quoting

---

[35] The Court disagrees with Fisher's contention that intent is an essential conduct element of Counts One and Two because in *Clenney* the Fifth Circuit held intent cannot be a conduct element since it "merely speaks to the offender's *mens rea* as he commits the conduct essential to the crime." *Clenney*, 434 F.3d at 782 (emphasis in original).

*United States v. Neder*, 197 F.3d 1122, 1128 (11th Cir. 1999)),[36] this Court disagrees with the Ninth Circuit's conclusion that "[m]ateriality is not conduct because it does not require anything to actually happen," *Fortenberry*, 89 F.4th at 707. Instead, this Court deems materiality a part of the essential conduct of a § 1001 crime because materiality is an intrinsic component of the nature of the crime.[37] *See Reed*, 773 F.2d at 482 ("[P]laces that suffer the effects of a crime are entitled to consideration for venue purposes. Such districts have an obvious contact with the litigation in their interest in preventing such effects from occurring. To some extent this factor overlaps with the definition and nature of the crime.").

Applying the second step of the *Rodriguez-Moreno* analysis, this Court agrees with the rationale of the First, Second, Fourth, Sixth, and Seventh Circuits. Here, that means the location of the commission of the crimes charged in Counts One and Two is both the Middle District of Georgia—where the false statement is alleged to have been made—and the Northern District of Mississippi—where such false statement affected a federal grand jury investigation—due to the presence of a materiality element in both of the statutes underlying these counts. In reaching this conclusion, the Court was particularly persuaded by the Fourth Circuit's holdings in *Bowens* and *Oceanpro* that, respectively, "Congress may, consistent with the venue clauses of Article III and the Sixth Amendment, define the essential conduct elements of a criminal offense in terms of their effects, thus providing venue where those effects are felt," 224 F.3d at 312; and "where … the essential conduct constituting the offense inherently references the effects of that conduct, 'venue is proper in the district where those prescribed effects would be felt,'" since "Congress, by

---

[36] *Accord United States v. Smith*, 54 F.4th 755, 769 (4th Cir. 2022); *United States v. Wellman*, 26 F.4th 339, 350 (6th Cir. 2022); *United States v. Johnson*, 19 F.4th 248, 258 (3d Cir. 2021); *United States v. Chen*, 998 F.3d 1, 10 (1st Cir. 2021); *United States v. Stein*, 985 F.3d 1254, 1270 (10th Cir. 2021).

[37] Fisher does not dispute that materiality is a conduct element of both § 1001(a)(1) and § 1001(a)(2). Doc. #36 at 18–20.

including the materiality element [in § 1001], inherently referenced the effect of making a false statement," 674 F.3d at 329. Such reasoning swayed this Court because "[i]t is [a court's] duty 'to give effect, if possible, to every clause and word of a statute.'" *United States v. Menasche*, 348 U.S. 528, 538–39 (1955) (quoting *Inhabitants of Montclair Twp. v. Ramsdell*, 107 U.S. 147, 152 (1883)); *see Russello v. United States*, 464 U.S. 16, 23 (1983) ("'[I]t is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion' [of certain language].") (quoting *United States v. Wong Kim Bo*, 472 F.2d 720, 722 (5th Cir. 1972)).

In *Fortenberry*, the Ninth Circuit raised concerns that using effects-based venue for a § 1001 crime would have "odd and troubling result[s] for an offense that does not require an actual effect on the investigators," remarking that "[t]he founding generation had a deep and abiding antipathy to letting the government arbitrarily choose a venue in criminal prosecutions [and i]mplying an effects-based test for venue in Section 1001 cases, when Congress has not so specified, would allow just that, in derogation of our historical principles." 89 F.4th at 709, 712. This Court does not share those concerns because this Court's decision to allow effects-based venue for the Counts One and Two § 1001 charges is, as noted above, the result of its application of the *Rodriguez-Moreno* analysis, which requires careful consideration of the statutes as written by Congress.

Because using the *Rodriguez-Moreno* analysis, this Court determined the proper venue for the § 1001 crimes charged against Fisher are both the Northern District of Mississippi and the Middle District of Georgia, proceeding with venue in the Northern District of Mississippi does not, as Fisher contends, violate Article III of the Constitution or the Vicinage Clause of the Sixth Amendment. The § 1001 crimes premised on the false statements Fisher allegedly made were committed in the Northern District of Mississippi under the effects-based venue analysis detailed

24

above. *See Salinas*, 373 F.3d at 167 ("When materiality is a critical component of the statutory definition, it makes perfect sense to consider the crime as continuing into the district in which the effects of the false statement are felt."). Fisher's request to dismiss Counts One and Two of the Indictment for improper venue will be denied.

### 2. Count Four: 18 U.S.C. § 1519

Count Four of the indictment charges Fisher with "knowingly conceal[ing] and cover[ing] up documents and tangible objects … with the intent to impede, obstruct, and influence a federal criminal investigation," in violation of 18 U.S.C. § 1519. Doc. #3 at 27.

Regarding the first step in the *Rodriguez-Moreno* analysis, Fisher states that "[t]he four (4) 'essential conduct elements' of Count Four the Government must prove are: (1) Act of Concealment, Alteration, or Destruction …; (2) Intent to Obstruct …; (3) Jurisdiction …; and, (4) Knowledge." Doc. #36 at 21. As to the second step, Fisher contends there is not "any language regarding 'the location of the commission of the criminal acts'" included in Count Four. *Id.* at 25. Since "an act constituting the alleged offense *must* have occurred in the district of indictment," says Fisher, "the indictment here must be dismissed, because, taking all allegations in the indictment as true, every act or action Fisher is alleged to have done occurred in Georgia." *Id.* at 30, 31 (emphasis in original).

The government responds that "element two of section 1519 is clearly defined in terms of its particular effect [on] the relevant proceeding. … Put another way, the crime could not be committed unless [Fisher] intended to affect the federal investigation, which, here, was properly initiated in the Northern District of Mississippi." Doc. #39 at 19. The government adds, "The indictment alleges that Fisher withheld Form 202s in order to impeded [sic], obstruct, and influence a federal investigation arising out of the Northern District of Mississippi by concealing

25

Form 202s[ and t]he effects of Fisher's actions were clearly intended to impact the investigation out of the Northern District of Mississippi into the cause of the crash, and therefore the Northern District of Mississippi is an appropriate venue for the section 1519 charge." *Id.* at 20.

Fisher replies that this Court should be persuaded by the Ninth Circuit's rejection of "effects based" venue jurisdiction[38] because it "dovetails almost perfectly with the Fifth Circuit's ruling that 'the intent element is a mental state that cannot have been "committed" anywhere but where defendant was physically present.'"[39] Doc. #42 at 19–20.

### a. Ninth Circuit

It appears that only the Ninth Circuit has ruled on the applicability of effects-based venue for a § 1519 charge. In *United States v. Abouammo*, Ahmad Abouammo was indicted in the Northern District of California for, among other things, falsifying records in a federal investigation while in Seattle, Washington, in violation of 18 U.S.C. § 1519.[40] 122 F.4th 1072, 1079, 1080 (9th Cir. 2024). "The district court denied Abouammo's motion to dismiss the document falsification charges on grounds of improper venue," concluding that "venue on the § 1519 charge was proper in the Northern District of California because 'the crime is tied to the potentially adverse effect upon a specific (pending or contemplated) proceeding, transaction, etc., and venue may properly be based on the location of that effect.'" *Id.* at 1080, 1089. After he was found guilty at trial,

---

[38] Fisher fails to address that the Ninth Circuit has held that effects-based venue is proper for charges under 18 U.S.C. § 1519, as discussed below.

[39] While Fisher does not include a citation, the Court presumes he is quoting *Clenney*. 434 F.3d at 782. The Court explained above why *Clenney* does not disallow effects-based venue for charges under statutes other than 18 U.S.C. § 1204.

[40] In June 2014, Abouammo, a media partnership manager at Twitter, met Bader Binasaker, "a close associate and 'right-hand-man' of Saudi Crown Prince Mohammed bin Salman." *Abouammo*, 122 F.4th at 1077. "On October 20, 2018, the New York Times published an article describing how [Saudi advisors] had mobilized against critics on Twitter," which prompted FBI agents to travel to Seattle to speak with Abouammo. *Id.* at 1079. Abouammo gave a document to the FBI agents, which he purported was an invoice for work performed for [the Mohammed bin Salman Foundation], which showed $100,000 billed for one year of social media consulting." *Id.* at 1080. The metadata of that invoice showed it was created on the same day that the FBI agent spoke with Abouammo. *Id.*

Abouammo appealed his conviction. *Id.* at 1080–81. Pointing to its decisions in *United States v. Angotti*[41] and *United States v. Fortenberry*,[42] the Ninth Circuit held that "venue over Abouammo's § 1519 charge was proper in the Northern District of California." *Id.* at 1092. It explained that "Abouammo's statute of conviction required him to have falsified a record '*with the intent to impede, obstruct, or influence the investigation* or proper administration of any matter within the jurisdiction of any department or agency of the United States.'" *Id.* (quoting 18 U.S.C. § 1519) (emphasis in original). Because "§ 1519 '*expressly contemplates* the effect of influencing the action' of another," the Ninth Circuit concluded that "the express connection between the actus reus and its contemplated effect on another … is patent" and "therefore, it is proper to conclude that the contemplated effects are part of the 'essential conduct' of the offense for venue purposes because the statute[] expressly define[s] the conduct in those terms." *Id.* (quoting *Fortenberry*, 89 F.4th at 710) (emphasis in original). "Having considered 'the conduct constituting the offense'— and having concluded that § 1519 permits effects-based venue in the location where the obstructed investigation was taking place"—the Ninth Circuit then "discern[ed] the location of the commission of the criminal acts." *Id.* at 1093 (quoting *United States v. Lukashov*, 694 F.3d 1107, 1120 (9th Cir. 2012)). It found that "Abouammo's act of making a false document 'with the intent

---

[41] In this case, "Angotti[] submitted false loan documents to a mortgage company … which sent the materials to a bank branch in the Northern District of California, which then forwarded the materials for approval to the bank's headquarters in the Central District of California*." Id*. at 1090. Based on those false documents, "Angotti was charged in the Central District with violating 18 U.S.C. § 1014, which criminalizes 'knowingly making any false statement … for the purpose of influencing … the action' of a federally insured institution." *Id.* (quoting *Angotti*, 105 F.3d 539, 542 (9th Cir. 1997)). The Ninth Circuit "held that venue was proper in the Central District" because that is "'where the communication reached the audience whom it was intended to influence.'" *Id.* at 1090–91 (quoting *Angotti*, 105 F.3d at 542). This analysis was appropriate because "under 18 U.S.C. § 3237, 'the crime of making a false statement is a continuing offense that may be prosecuted in the district where the false statement is ultimately received for final decisionmaking.'" *Id.*

[42] In *Fortenberry*, the Ninth Circuit found its decision in *Angotti* "'readily distinguishable'" since § 1014 "differed from § 1001 because § 1014 'expressly contemplates the effect of influencing the action of a financial institution.'" *Id.* at 1092 (quoting 89 F.4th at 710). Section 1001, "by contrast, contemplated no similar effect as part of its essential conduct." *Id.*

to impede, obstruct, or influence' a federal investigation … continued until the document was 'received by the person or persons whom it was intended to affect or influence.' And here it was received by FBI agents working out of the FBI's San Francisco office." *Id.* (internal citation omitted). Thus, "the offense was continued or completed in the Northern District [of California], making venue proper there." *Id.*

> *b. Northern District of Mississippi as Improper Venue for Count Four*

Applying the first step in the *Rodriguez-Moreno* analysis, this Court finds the conduct elements of § 1519 to be altering, destroying, mutilating, concealing, covering up, falsifying, or making a false entry in any record, document, or tangible object. Though the statutory text of § 1519 includes the word "intent," the Court does not include intent as an essential conduct element of § 1519 due to Fifth Circuit law. Specifically, in *Clenney*, in determining that effects-based venue was not appropriate as to § 1204, which also includes the word "intent" in its statutory text,[43] the Fifth Circuit stated that intent "merely speaks to the offender's *mens rea* as he commits the conduct essential to the crime; it is plainly not an 'essential conduct element' as required by *Rodriguez-Moreno*." *Clenney*, 434 F.3d at 782 (emphasis in original).

Applying *Rodriguez-Moreno*'s second step, the Court finds that the location of the alleged commission of the conduct elements is the Middle District of Georgia. *See Clenney*, 434 F.3d at 782 ("[E]ven if the intent to [commit the crime] were an essential conduct element … the intent element is a mental state that cannot have been 'committed' anywhere but where [the defendant] was physically present."). In other words, the Court is not persuaded by the Ninth Circuit's decision in *Abouammo* to find that Fisher's act of concealing Form 202s continued until it affected

---

[43] "Whoever removes a child from the United States, or attempts to do so, or retains a child (who has been in the United States) outside the United States with *intent* to obstruct the lawful exercise of parental rights shall be fined under this title or imprisoned not more than 3 years, or both." 18 U.S.C. § 1204(a) (emphasis added).

28

federal agents in the Northern District of Mississippi since it does not identify intent as an essential conduct element of § 1519. Consequently, this Court finds that effects-based venue is not proper for a § 1519 crime. So, venue is not proper in the Northern District of Mississippi for the § 1519 crime charged against Fisher. Fisher's request to dismiss Count Four based on improper venue will be granted.

**V**
**Conclusion**

In accordance with the discussion above, Fisher's motion to dismiss [35] is **GRANTED in Part and DENIED in Part**. The motion is GRANTED to the extent Count Four of the Indictment is **DISMISSED without prejudice**.[44] The motion is DENIED in all other respects.

**SO ORDERED**, this 23rd day of December, 2025.

/s/Debra M. Brown
**UNITED STATES DISTRICT JUDGE**

---

[44] *See McClintock v. Sch. Bd. E. Feliciana Par.*, 299 F. App'x 363, 366 (5th Cir. 2008) ("Generally, when dismissing for improper venue, a district court does so without prejudice to filing of the suit in an appropriate district.").